UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MING KUO YANG and JULIE YANG,
husband and wife,

        Plaintiffs,

v.

CITY OF WYOMING, MICHIGAN, a
municipal corporation,

        Defendant.

                    /

File No.  1:13-CV-616

HON. ROBERT HOLMES BELL

## **O P I N I O N**

In this action Plaintiffs allege that the City of Wyoming violated their procedural due process rights by failing to give them proper notice before demolishing their commercial building. This matter is before the Court on the parties' cross-motions for summary judgment. (ECF Nos. 46, 47.)  For the reasons that follow, the Court will grant Defendant's motion, deny Plaintiffs' cross-motion, and enter judgment for Defendant.

## **I.**

Plaintiffs Min Kuo "James" Yang and his wife Julie Yang have been the owners of property located at 2675 28th St. S.W. in Wyoming, Michigan (the "Property") since 1989. The Property had a commercial building on it that housed a restaurant called Abacus. Plaintiffs listed the Property for sale with a realtor in late 2010.  (Pls. Ex. 1, M. Yang Aff.

¶ 9.)[1]  In February 2011 Abacus closed for business.  (*Id.*.)  Plaintiffs remained the owners of record.  (*Id.*)  The county property records reflect that the Plaintiffs are the owners of the Property, and that their home address is 6483 Brookhills Ct. S.E., Grand Rapids, MI.  (Pls. Ex. 4, ECF No. 48.)  After Abacus closed for business, Defendant City of Wyoming (the "City") has been sending the Property's tax, energy, and sewer and water bills to the Plaintiffs' home address.   (Answ. ¶ 19, ECF No. 8; M. Yang Aff. ¶ 3.)

On October 5, 2011, a city inspector visited the Property and noted a number of ordinance violations, including roof damage, chipped or peeling paint, a boarded vent, damaged rear siding, rotted facia, a pothole in the driveway, and three abandoned vehicles. The inspector characterized the Property as "abandoned," posted an abandoned structure ("AS") card on the building, and filed a complaint with the City for condemnation.  (Pls. Ex. 12.)  On October 6, 2011, the City mailed a Notice of Abandoned Structure to "Joseph Gordon" at the Property's address, 2675 28th St. S.W., Wyoming, MI.  (Pls. Ex. 5.)

The Property continued to be inspected on a monthly basis.  (Def. Ex. 1, Pls. Ex. 12, Enforcement Log.)  On July 12, 2012, the inspector determined that the structure on the Property was a Dangerous Building under the Code and posted a "Notice of Condemnation," also known as a repair/demolish notice, on the building.  (Enforcement Log.)  On July 20, 2012, the City sent a Notice of Posting and a Notice and Order to Repair or Demolish

---

[1]Unless otherwise noted, Plaintiffs' exhibits are located at ECF No. 48, and Defendant's exhibits are located at ECF No. 46.

2

("Demolition Notice") to Joseph Gordon at the Property address by certified mail.  (Pls. Exs. 7, 8, 9; Bell Dep. 57, Pls. Ex. 10.)  The Post Office returned the Notice of Posting and the Demolition Notice as "unable to forward" and "vacant."  (Pls. Ex. 11.)

In September 2012, the City discovered that the notices had been incorrectly mailed to the wrong person and address.  On September 11, 2012, the City sent the Demolition Notice and the Notice of Posting to the Plaintiffs' residence at 6480 Brookhills Ct. by certified mail, return receipt requested.  (Pls. Ex. 14.)  The Post Office returned the September 11 Demolition Notice to the City as "unclaimed." (Pls. Ex. 18; Bell Dep. 97, Def. Ex. 8.)

On October 18, 2012, the City mailed a notice of a November 1, 2012, hearing ("Hearing Notice") before the City Housing Board of Appeals regarding 2675 28th St. S.W. to Plaintiffs at their home address by regular mail.  (Pls. Exs. 18, 19.)  The letter provided that "The purpose is to hear all interested parties . . . regarding the City's Notice to Repair or Demolish the structure(s)."  (Pls. Ex. 19.)  The letter further provided that Plaintiffs had a right to attend the meeting, to present evidence, and to have an attorney present.  The notice of hearing was also posted on the Property and published in the City newspaper.  (DeLange Dep. 22, ECF No. 50-2.)  The City sent a courtesy copy of the October 18, 2012, Hearing Notice to Bill Tyson, NAI West Michigan, the realtor whose For Sale sign was on the property.  (Pls. Ex. 19; Def. Ex. 2, DeLange Dep. 22-23.)  The Post Office did not return the October 18, 2012, letter addressed to Plaintiffs or the letter addressed to the realtor.  (Bell

3

Dep. 98, Def. Ex. 8 .)

At the hearing on November 1, 2012, James DeLange, the Chief Building Inspector, informed the Housing Board of Appeals that the certified letter sent to the owners with the Demolition Notice had not been claimed.  (Housing Bd. Mins., Pls. Ex. 20.)  He advised that the building had been vacant over a year, was in disrepair, and had been posted with a Repair or Demolish order since October 2011.  He also advised that the taxes were being paid.  The Board of Appeals approved the demolition of the structure.  On November 7, 2012, the City sent a letter to Plaintiffs at their home address stating that the Board of Housing Appeals had affirmed the City's notice and order to demolish the building ("Post-Hearing Notice").[2]  (Pls. Ex. 21.)  The Post Office did not return this letter to the City.  Following the November 1 hearing, the City obtained bids for demolition of the building and awarded the contract to the low bidder, Pitsch Wrecking, in the amount of $15,000.  (Def. Ex. 7; Pls. Ex. 22.)  On November 14, 2012, the City posted the demolition order at the front entry way on the Property. (Pls. Ex. 12.)  The structure and parking lot were demolished in January 2013.  The City Code provides that all costs of demolition, plus 50%, shall be assessed against the property.  (City Code § 10-179, PM 106.6, Pls. Ex. 31, ECF No. 53.)  On January 31, 2013,

---

[2]The letter provided:  "At their regular meeting held on November 1, 2012, the Wyoming Board of Housing Appeals affirmed the City's Notice and Order to demolish the building at the above referenced properties."  (Pls. Ex. 21.)  The letter advised Plaintiffs of their right to file an appeal to the Kent County Circuit Court within 30 days.  It also advised that the demolition would be awarded to the lowest bidder who would remove the structure at their earliest convenience.

4

the City mailed a demolition bill to the Plaintiff's residence address in the amount of $22,500, with notice that the City would add an additional 1% for every month that the charge is not paid.  (Answ. ¶ 37, ECF No. 8.)

Chief Building Inspector DeLange received a call after the demolition from someone who identified himself as Mr. Yang and claimed to be the owner of the Property.  In the course of the conversation that person stated "I remember getting the mail that said something about fixing up the building, but I ignored it."  (DeLange Dep. 55, Def. Ex. 3, ECF No. 51; DeLange Aff., Def. Ex. 4, ECF No. 51.)

Plaintiffs have filed sworn statements indicating that before the City demolished the building they were "not aware that the City of Wyoming had ordered the repair or demolition of the building on the property, that the City of Wyoming was going to hold or had held a hearing on whether to demolish the building, that the City was planning to demolish the building if [they] did not repair it, or what repairs had to be made to avoid demolition."  (M. Yang Aff. ¶ 14,; J. Yang Aff. ¶ 7, Pls. Ex. 2.)  Plaintiffs do not dispute the fact that the September 11, 2012, Demolition Notice and the October 18, 2012, notice of hearing were sent to the proper address nor do they claim that they were not living at that address.

Plaintiffs filed this action for damages against the City[3] for failing to give proper notice before demolishing their commercial building.  Plaintiffs allege that Defendant demolished

---

[3]All claims against James DeLange were dismissed on stipulation of the parties. (ECF No. 36.)

5

their commercial building in violation of their due-process rights and the City's ordinance.

This matter is before the Court on the parties' cross-motions for summary judgment. The City contends that it is entitled to summary judgment because it made every effort reasonably calculated to give Plaintiffs notice and opportunity to be heard prior to the demolition of the building and because Plaintiffs cannot prove that they have suffered any damages as a result of the demolition. Plaintiffs contend that they are entitled to summary judgment because the City violated their procedural due process rights and because there is no issue of fact as to the amount of compensatory damages they are entitled to.

## II.

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is proper if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. In evaluating a motion for summary judgment the Court must look beyond the pleadings and assess the proof to determine whether there is a genuine need for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). If the moving party carries its burden of showing there is an absence of evidence to support a claim then the nonmoving party must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324-25 (1986). The mere existence of a scintilla of evidence in support of the nonmoving party's position is not sufficient to create a genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). The proper inquiry is "whether

the evidence presents a sufficient disagreement to require submission to a jury or whether it

is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52.

## III.

In Count 1 of their Complaint, Plaintiffs allege that the City violated their civil rights

by depriving them of property interests without due process of law.  Plaintiffs seek monetary

damages and an injunction against the City from charging Plaintiffs for any costs, fees,

interest, or penalties related to the unconstitutional demolition of the Property.

The Due Process Clause of the Fourteenth Amendment prohibits states from depriving

any person of property without "due process of law."  U.S. Const. amend. XIV.  "[D]ue

process in any proceeding which is to be accorded finality is notice reasonably calculated,

under all the circumstances, to apprise interested parties of the pendency of the action and

afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank &*

*Trust Co.*, 339 U.S. 306, 314 (1950).  "Due process does not require that a property owner

receive actual notice before the government may take his property*." Jones v. Flowers*, 547

U.S. 220, 226 (2006) (citing *Dusenbery v. United States*, 534 U.S. 161, 170 (2002)).  The

"'notice required will vary with circumstances and conditions.'" *Id.* at 227 (quoting *Walker*

*v. City of Hutchinson*, 352 U.S. 112, 115 (1956)).  However, "[t]he means employed must be

such as one desirous of actually informing the absentee might reasonably adopt to accomplish

it." *Mullane*, 339 U.S. at 315.  "[A]ssessing the adequacy of a particular form of notice

requires balancing the interest of the State against the individual interest sought to be

7

protected by the Fourteenth Amendment." *Flowers*, 547 U.S. at 229.

Plaintiffs contend that this case is governed by *Flowers*, and that under *Flowers,* the notice provided was constitutionally deficient as a matter of law.

In *Flowers*, Jones owned a house on North Bryan Street, but did not live there. The state sent a certified letter to Jones at the North Bryan Street address, advising that there was a tax delinquency and that the property would be subject to a public sale in two years if it was not redeemed. The post office returned the letter marked "unclaimed." Two years later, the State published a notice of public sale. No bids were submitted, so the State negotiated a private sale of the property. The State mailed another certified letter to Jones at the North Bryan Street address advising that the house would be sold if he did not pay his taxes. This second letter was also returned marked "unclaimed." The State sold the house to Flowers. Jones did not learn about the sale until after the redemption period had passed. Jones filed suit, claiming a violation of his right to procedural due process. The Supreme Court held that "when mailed notice of a tax sale is returned unclaimed, the State must take additional reasonable steps to attempt to provide notice to the property owner before selling his property, if it is practicable to do so." *Id.* at 225.

Plaintiffs contend that when the certified mailing of the Demolition Notice was returned "unclaimed," the City knew that Plaintiffs were no better off than if the City had never mailed the Demolition Notice at all. *See Flowers*, 547 U.S. at 221. Plaintiffs contend if the City truly desired to put the Plaintiffs on actual notice of the demolition, it would have

8

taken the most obvious and least burdensome step available to it: "resend the notice by regular mail, so that a signature was not required." *Id.* at 234. Plaintiffs contend that because the City did nothing to ensure notice after the Demolition Notice was returned unclaimed, the notice was constitutionally insufficient under *Flowers*.

Although the facts of this case bear some similarity to the facts in *Flowers*, there are critical differences that persuade this Court that *Flowers* does not end the due process inquiry in this case. *Flowers* addressed the adequacy of notice prior to the State "extinguishing a property owner's interest in a home." 547 U.S. at 229. In *Flowers* the unclaimed certified mail was the only effort to provide notice before the State extinguished Jones's interest in the property by selling it at the private sale. In contrast to the facts in *Flowers*, the City in this case did not extinguish Plaintiffs' interest in the building immediately after the failed attempt to give notice. The unclaimed Demolition Notice was not the only notice sent to Plaintiffs before their building was demolished. The City also sent Plaintiffs a Hearing Notice.

Plaintiffs contend that although the Hearing Notice was reasonably calculated to reach them, it was not reasonably calculated to notify them of the impending loss of their property. Plaintiffs contend that the Hearing Notice was not sufficient to inform them of the proposed demolition of their property or to give them a meaningful opportunity to prepare for the hearing because it did not advise *what* would be demolished, *why* it would be demolished, *where* the demolition would take place, or *how* the demolition could be avoided.

Contrary to Plaintiffs' assertions, the Hearing Notice did give them significant

9

information regarding the impending loss of their property.  It advised that the hearing was about the City's "Notice to Repair or Demolish" the "structure(s)" on their property at "2675 28th St. S.W.," and that Plaintiffs would have an opportunity at the hearing to present evidence through counsel.  (Pls. Exs. 18, 19.)  Although the Hearing Notice did not explain why the building would be demolished or how the demolition could be avoided, the information provided would have put a reasonable person on notice that the City was contemplating some action, potentially including demolition, with respect to the building. Even if the Hearing Notice was not sufficient in and of itself to explain what violations had been observed or how the demolition could be avoided, it was at least sufficient to put Plaintiffs on inquiry notice that the City was about to make some decision concerning their vacant building.  More specific information about the Demolition Notice could have been obtained through a phone call to the City, a visit to the City offices, or a visit to the Property which had been posted with the Demolition Notice since July 12, 2012.  (Enforcement Log.)

Although the Supreme Court rejected the State's inquiry notice argument in *Flowers*, it did not suggest that inquiry notice is never an appropriate consideration in determining the adequacy of notice.  The Court merely held in *Flowers* that "the common knowledge that property may become subject to government taking when taxes are not paid does not excuse the government from complying with its constitutional obligation of notice before taking private property."  547 U.S. at 232.  In this case, inquiry notice does not merely rest on "common knowledge" that a vacant building might result in some action by the City, or on

10

the general duty of a property owner to be aware of the condition of his property and any postings on it. In this case, inquiry notice is based on a notice of hearing sent directly to Plaintiffs that specifically advised that some action based on a "Notice to Repair or Demolish" was being considered with respect to the structure on their Property.

The Hearing Notice was also sent to the realtor whose sign was posted on Plaintiffs' Property. Sending the notice of hearing to the realtor was not a "mere gesture." Together with the other actions taken by the City, it is an action that one desirous of actually informing Plaintiffs might reasonably adopt to accomplish such notice. The City could reasonably assume that the realtor, as Plaintiffs' real estate agent, owed a duty to Plaintiffs to keep abreast of the status of the Property and to communicate with Plaintiffs regarding postings on the Property and notices of hearings regarding the Property.

Plaintiffs also contend that the Hearing Notice was not sufficient to satisfy *Flowers* because it was sent before the unclaimed Notice to Repair or Demolish was returned to the City. The Court is not convinced that *Flowers* requires a particular sequence of actions, so long as the actions, as a whole, are "reasonably calculated, under all the circumstances," to give notice and an opportunity to be heard. In this case, the Court is satisfied that taken together, the unclaimed Demolition Notice, the Hearing Notice to Plaintiffs and their realtor, and the posting of the Property, were reasonably calculated to give notice and an opportunity to be heard.

Finally, the Court notes that after the decision to demolish the building was affirmed

11

at the November 1 hearing, and before the building was demolished, the City sent Plaintiffs a letter at their home address explicitly advising them that the City's Notice and Order to Demolish the building at 2675 28th St. S.W. had been affirmed, that Plaintiffs had a right to appeal, and that the City would be awarding the demolition to the lowest bidder who would remove the structure.  (Pls. Ex. 21.)

Plaintiffs do not dispute that this letter was sufficient to put them on notice of the City's intent to demolish the building.  However, they contend that a letter informing them of the City's decision after a hearing that they never participated in due to lack of adequate notice does not afford them the process they are due.  Plaintiffs contend that the Post-Hearing Notice did not cure the City's due process error because at that point the City's decision to demolish had become final.

Although the evidentiary hearing had already been held and the decision to demolish had been made, the building had not yet been demolished.  The November 7 letter provided Plaintiffs with notice of the proposed demolition and an opportunity to appeal before their rights were finally extinguished by the demolition of the building.  Because the City sent this letter sufficiently in advance of the actual demolition, Plaintiffs had an opportunity not only to file an appeal, but to request a stay pending appeal, to request a reconsideration of the decision, or to request injunctive relief pending an opportunity to be heard.  While there is no question that re-sending the Demolition Notice by regular first class mail would have satisfied the City's constitutional notice obligations, its failure to do so, under the totality of the

12

circumstances of this case, do not amount to a deprivation of due process.  The City gave

Plaintiffs reasonable notice and an opportunity to be heard before it demolished their building.

Accordingly, Defendant is entitled to judgment on Count 1 of Plaintiffs' complaint.

## IV.

In Count 2 of their Complaint, Plaintiffs allege violation of a City ordinance.  Plaintiffs

allege that the City failed to send proper notice to Plaintiffs' home address by first-class mail

as required by the Ordinance.  (Compl. ¶¶  54, 55.)

The City Ordinance provides that when a building is declared to be dangerous, written

notice of such declaration and the required repairs or demolition of the building shall be given

to the owner.  (Ord. § 10-179, PM 110.2.)  The Ordinance specifies the information that must

be included in the notice.[4]   The Ordinance also addresses what it means to give notice of

---

[4]Section 110.2 of the Property Maintenance Code provides:

Whenever the code official has declared a building as dangerous, he shall give
a written notice of such declaration and the required repairs or demolition of
the building to the owner of the building. Such notice shall include the
following:
(a) A description or address for the real estate.
(b) A statement of the violations, referring to the sections of this article or any
other section of the city code.
(c) A statement obligating the owner to bring the building into complete
compliance with this  code and all other applicable sections of the city code,
or to demolish and remove the building.
(d) A reasonable time limit for the completion of the repair or demolition, not
to exceed 90  days.
(e) A statement requiring the owner to state his intentions as to the repair or
demolition order within ten days. The owner shall so state his intentions in

(continued...)

demolition.[5]  Notice may be served by sending the notice by first-class mail.  The Demolition

Notice in this case was sent by first-class mail to the Plaintiffs with the added service of

_____

[4](...continued)
writing to the city within such ten-day period. Failure to respond shall be
considered a negative response which may result in the city implementing
accelerated compliance measures.

(City Code § 10-179, PM 110.2, Pls. Ex. 31, ECF No. 53.)


[5]Section 1-25 of the Ordinance provides for notice as follows:

Notice regarding sidewalk repairs, sewer or water connections, dangerous
structures, abating nuisances or any other act, the expense of which if
performed by the city may be assessed against the premises under the
provisions of this Code, shall be served:
>    (1) By delivering the notice to the owner personally or by leaving the
>    notice at his residence, office or place of business with some person of
>    suitable age and discretion.
>    (2) By telephone.
>    (3) By mailing the notice by first class mail to such owner at his last
>    known address.
>    (4) If the owner is unknown, by posting the notice in some conspicuous
>    place on the premises at least five days before the act or action
>    concerning which the notice is given is to take place. No person shall
>    interfere with, obstruct, mutilate, conceal or tear down any official
>    notice or placard posted by any city officer, unless permission is given
>    by the officer.
>    (5) In the case of grass and noxious weeds, notice shall be given by
>    advertising three times during the month of April in a newspaper with
>    city circulation and designated by the city council as the official, legal
>    advertising media for the city.

(Ord. § 1-25, Pls. Ex. 31, ECF No. 53.)

14

certified mail.[6]  There is nothing in the Ordinance to suggest that combining first-class mail with the added certified mail service does not satisfy the Ordinance's requirement that notice be sent by first-class mail.  Because Plaintiffs have not come forward with evidence to create an issue of fact as to the sufficiency of the notice under the terms of the Ordinance, Defendant is entitled to judgment on Count 2 of Plaintiffs' complaint.

For the reasons stated herein, Defendant's motion for summary judgment will be granted, Plaintiffs' cross-motion for summary judgment will be denied, and judgment will be entered in favor of Defendant.

An order and judgment consistent with this opinion will be entered.


Dated: June 26, 2014                          /s/ Robert Holmes Bell
                                              ROBERT HOLMES BELL
                                              UNITED STATES DISTRICT JUDGE

---

[6]According to the United States Postal Service, certified mail is an extra service option that may be combined with first class or priority mail.  www.usps.com.

15